**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                             No. 14-CR-00421 WJ

CALVIN FRANK JOE,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court upon Defendant Calvin Frank Joe's Objections to Presentence Report, **(Doc. 45)**, filed February 23, 2015, and Defendant's Supplemental Objections to the Request for Restitution and Memorandum in Support, **(Doc. 51)**, filed April 13, 2015. Having reviewed Defendant's objections and the applicable law, the Court finds that Defendant's objections concerning restitution are well-taken and, therefore, are SUSTAINED.

**BACKGROUND**

Defendant entered into a plea agreement with the Government in which he pled guilty to one count of involuntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112(a). The United States Probation Office thereafter filed a Presentence Report ("PSR") in which the Office noted, *inter alia*, that the victim's family was seeking restitution, including $3,200 for the services of the medicine man for the victim's tribe.[1] This sum was based on four visits to the medicine man by the victim's wife and another four visits by the victim's daughter, with each visit costing $400.

---

[1] Both Defendant and his victim were confirmed tribal members of the Navajo Nation of Window Rock, Arizona.

On February 23, 2015, Defendant filed his initial Objections to the PSR. Included in that document were objections to the victim's family's request for $3,200 for the medicine man's services. On March 3, 2015, the Court held a sentencing hearing in which it addressed other objections and sentenced Defendant to a term of incarceration and other conditions. However, the Court instructed the parties to brief the matter of Defendant's objections to restitution.

The Government filed its response to Defendant's initial objections on March 16, 2015. Plaintiff subsequently filed his Supplemental Objections to the Request for Restitution and Memorandum in Support, in which he elaborated on his objections to the restitution sought by the victim's family. In his Supplemental Objections, Defendant disputes the legal authority for the requested restitution, challenges the application of the Government's restitution authority to the facts at hand, and raises a First Amendment challenge to such restitution. The Government did not file any further responsive briefing.

## DISCUSSION

### I.  Applicable Law

Defendant begins by challenging the application of the Mandatory Victim's Restitution Act ("MVRA") to the present case. In the plea agreement, "[t]he parties agree[d] that . . . the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A." (**Doc. 40**), Plea Agreement. However, the MVRA only applies to an exclusive list of crimes, and the only arguably applicable provision here would be for "crimes of violence." *See* 18 U.S.C. § 3663A(c)(1)(A)(i). Defendant argues that the MVRA does not apply here because his involuntary manslaughter conviction does not count as a crime of violence; instead, Defendant contends, the Court may only order restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663.

The Court finds this question to be largely academic. Defendant is likely correct that involuntary manslaughter is not a "crime of violence" for MVRA purposes.[2] However, both the VWPA and the MVRA allow reimbursement of "necessary funeral and related services." 18 U.S.C. §§ 3663(b)(3), 3663A(b)(3). Both statutes also have analogous provisions regarding who may receive restitution. *Compare* § 3663(a)(1)(A), (a)(2), *with* § 3663A(a)(1)-(2). Thus, although analysis will proceed pursuant to the VWPA, the Court notes that this analysis would not change if the MVRA were applied instead.

## II.     Necessary Funeral and Related Services

Under the VWPA, restitution may be recovered for "necessary funeral and related services." 18 U.S.C. § 3663(b)(3). There appears to be no dispute among persuasive authorities that restitution may be appropriate under this provision for the services of a tribal medicine man at a funeral or other memorial for a victim. *E.g.*, *United States v. Iron Cloud*, 312 F.3d 379, 382-83 (8th Cir. 2002) (allowing restitution at a "giveaway ceremony," which served as "a memorial for [the victim] to show how much she was loved" and was held "to help bury" the victim); *United States v. Bedonie*, 317 F. Supp. 2d 1285, 1327 (D. Utah 2004) (allowing restitution where "the [medicine man's] services would seem to be part of the observances held in honor of the deceased victim"), *rev'd on other grounds*, 413 F. 3d 1126 (10th Cir. 2005). However, Defendant contends that the services of the medicine man in this particular case "were performed over a year after the funeral and were personal to the [victim's wife and daughter]," rather than relating to the spiritual well-being of the victim.

---

[2] The Tenth Circuit has previously said otherwise, *see United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993), and that case has not been explicitly overruled. However, the Tenth Circuit has expressly called this holding into question in light of more recent Supreme Court caselaw. *See United States v. Bedonie*, 413 F.3d 1126, 1130 (10th Cir. 2005) (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004)). Since that time, trial courts have reached consensus that *Lujan* no longer governs and that involuntary manslaughter is not a crime of violence for MVRA purposes. *See United States v. Hardwood*, 854 F. Supp. 2d 1035, 1055-56 (D.N.M. 2012) (citations omitted); *see also, e.g.*, *United States v. Mann*, 982 F. Supp. 2d 1251, 1256 (D.N.M. 2013).

The PSR indicates that the victim's wife and daughter provided documentation establishing that the medicine man did in fact provided services to them. However, Defendant claims that this documentation does not reflect what the medicine man's services were, why they were performed, or whether the victim's wife and daughter actually paid him for these services. Moreover, Defendant claims that the medicine man's services were engaged over a year after the victim's funeral, and the Government has submitted nothing to the contrary.

Defendant correctly observes that United States District Judge James O. Browning considered an analogous case several years ago and did not allow restitution under the VWPA. *See United States v. Harwood*, 854 F. Supp. 2d 1035 (D.N.M. 2012). In that case, involving another conviction for involuntary manslaughter on Navajo territory, a medicine man performed a "healing ceremony" on the deceased victim's sister for five days and gave her counseling. *See id.* at 1045. When the defendant challenged restitution for these costs, Judge Browning agreed, recognizing that the ceremony was not part of the victim's funeral services, that the ceremony was held over a year after the victim's death, and that only the sister benefitted from the medicine man's services. *See id.* at 1060. Although the sister claimed that the ceremony was "related to her brother's death," Judge Browning said that this was not enough:

> Although [the statutory phrase] "related services" broadens the scope of recoverable expenses beyond the actual funeral, the expenses must still be related to the funeral rather than just the death. If related services encompassed any services related to a victim's death, then § 3663(b)(3) would become a mechanism for recovering a broad swath of expenses. . . . [Accordingly], *related services in the context of "necessary funeral and related services" should be construed to include services which are connected with the funeral service, either through common purpose*—such as commemorating the life of the victim or addressing the spiritual salvation of the deceased—*or temporally*, such that the connection between the two events is obvious.

*Id.* at 1060-61 (emphasis added).

*Harwood* correctly demonstrates the close nexus required under § 3663(b)(3) between the victim's funeral and any claim for restitution. Here, there has been no showing that the medicine man's services were connected to the victim's funeral service, either through common purpose or temporally. Thus, without more, § 3663(b)(3) cannot serve as an appropriate basis for restitution of costs relating to the medicine man's services.

### III.     Necessary Medical and Related Professional Services

Through further citation to *Harwood*, Defendant appears to anticipate that the Government would argue for restitution under 18 U.S.C. § 3663(b)(2)(A), which covers "necessary medical and related professional services relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment" when an offense "result[s] in bodily injury to a victim." Although the Government does not raise this rationale, the Court considers it briefly.

There is no evidence before the Court that the medicine man's services here were rendered as "physical, psychiatric, [or] physiological care" to the victim himself. Alternatively, even assuming that the victim's wife and daughter may be considered "victims" for VWPA purposes,[3] there is no evidence of bodily harm to either person as a result of Defendant's actions. "[I]t appears that every federal court to consider the issues has determined restitution cannot be ordered under VWPA for lost income and emotional damages unless the victim suffered bodily, i.e., physical harm." *United States v. Dotson*, 242 F.3d 391, 2000 WL 1820375, at *5 (10th Cir.

---

[3] As a general rule, the VWPA allows restitution only "to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663(a)(1)(A). There is no evidence that the services in question were somehow provided to the victim's estate, rather than his wife and daughter individually. While a manslaughter victim's family members may be considered "victims" under the VWPA if they relied on the deceased for financial support, *see United States v. Checora*, 175 F.3d 782, 795 (10th Cir. 1999), there has been no showing of such support here. The PSR indicates that the victim's wife was employed prior to her husband's death, and nothing in the record indicates that their adult daughter relied on the victim for financial support.

2000) (unpublished table decision); *see also Harwood*, 854 F. Supp. 2d at 1063-64 (citing Fourth, Eighth, and Ninth Circuit cases). No evidence has been presented concerning physical harm done to the victim's wife and daughter by Defendant. Thus, § 3663(b)(2)(A) cannot serve as a basis for restitution for the medicine man's services to the victim's wife and daughter.

### IV.     Restitution Amount

Because the $3,200 sum paid to the tribal medicine man is not an appropriate amount for restitution under either 18 U.S.C. § 3663(b)(2)(A), 18 U.S.C. § 3663(b)(3), or analogous provisions of the MVRA, the Court will sustain Defendant's objection to this restitution amount.[4] Defendant raises no objection to the remainder of the PSR's recommendations as to restitution, including $1,000.00 to compensate the victim's burial plot and $1,465.14 to cover funeral services. *See* PSR at 8, ¶ 37. Nor does Defendant object to reimbursing the New Mexico Crime Victims Reparation Commission for $1,278.86 previously disbursed to the victim's wife. *See id.* at 9, ¶ 38. The Court will therefore order restitution in these amounts.

### CONCLUSION

For the foregoing reasons,

IT IS THEREFORE ORDERED THAT Defendant's objections to restitution concerning the services provided by the tribal medicine man are SUSTAINED.

IT IS FURTHER ORDERED THAT Defendant pay restitution in the amount of $2,465.14 to the victim's wife and daughter as specified in the PSR. *See* PSR at 9, ¶ 39.

IT IS FINALLY ORDERED that Defendant pay restitution in the amount of $1,278.86 to the New Mexico Crime Victims Reparation Commission as specified in the PSR. *See* PSR at 9, ¶ 40.

---

[4] Accordingly, the Court does not reach Defendant's First Amendment objection to restitution for the medicine man's services.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE